## BURNET, COMMISSIONER OF INTERNAL REVENUE, v. CHICAGO RAILWAY EQUIPMENT COMPANY.

No. 231.   Argued December 3, 1930.—Decided January 5, 1931.

See also 4 B. T. A. 452; 20 F (2d) 10; 14 B. T. A. 471.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher* and *Messrs. Claude R. Branch,* Special Assistant to the Attorney General, *Joseph H. Sheppard,* and *Bradley B. Gilman* were on the brief, for petitioner.

*Mr. Henry W. Price,* with whom *Mr. W. S. Oppenheim* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Revenue Act of June 2, 1924, c. 234, § 278 (c), 43 Stat. 253, 300, provides concerning income and profits taxes under the Revenue Act of 1918: "Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed

at any time prior to the expiration of the period agreed upon." Section 277 (a) (2), 43 Stat. 299, provides that the tax "shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period." Section 277 (b) provides that if due notice of the determination of a deficiency has been mailed to the taxpayer, and an appeal is taken to the Board of Tax Appeals, the time for making the assessment shall be extended "by the number of days between the date of mailing of such notice and the date of the final decision by the Board." Section 278 (d) provides that when assessed within the period prescribed by § 277 or § 278, " such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax." This case presents, among others, the question whether a waiver given while the case was pending before the Board of Tax Appeals but after the expiration of five years from the filing of the return tolls the statute of limitations.

On June 16, 1919, the Chicago Railway Equipment Company filed its income and profits tax return for 1918. On March 14, 1925, the Commissioner determined a deficiency and gave due notice thereof. On May 6, 1925, the taxpayer filed its appeal with the Board of Tax Appeals. On December 10, 1925, the taxpayer and the Commissioner executed an agreement which provided that " the time for making any assessment . . . shall remain in effect until December 31, 1926, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and . . . if an appeal is filed with said Board [of Tax Appeals] then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said board." On July 28, 1926, the Board confirmed, in the main, the Com-

missioner's determination, 4 B. T. A. 452; but the Circuit Court of Appeals remanded the case to it for further proceedings. 20 F. (2d) 10. Then, for the first time the defense was made that the deficiency had been barred by the statute of limitations. The Board overruled the objection, 13 B. T. A. 471; but its decision was reversed by the Circuit Court of Appeals, 39 F. (2d) 378. This Court granted a writ of certiorari.

*First.* The taxpayer contends that the agreement of December 10, 1925, was inoperative because the Commissioner lacked the power to sign a waiver after an appeal from his determination to the Board of Tax Appeals. The argument is that once such an appeal has been filed, the Commissioner's powers of investigation and determination have been exhausted; that thereafter his duty in making an assessment pursuant to the Board's order is purely ministerial; that the waiver is in effect an agreement not to plead the statute of limitations; and that the Commissioner is not authorized to receive such a waiver. As we said in *Stange* v. *United States,* decided this day, *ante,* p. 270, the Commissioner's signature was required purely for administrative purposes. See *Florsheim Bros. Co.* v. *United States,* 280 U. S. 453, 466. There was nothing in this requirement which limits the period during which a waiver may be effectively given. Compare *Aiken* v. *Commissioner,* decided this day, *ante,* p. 277. Moreover, at the time this waiver was executed, the Commissioner was contemplating the making of a jeopardy assessment which the taxpayer desired to avoid. The Commissioner was clearly authorized, under his general administrative powers, to accept instead the waiver as a substitute means of insuring ultimate collection. See *Aiken* v. *Commissioner, supra.*

*Second.* The taxpayer contends that the waiver was inoperative because the Commissioner lacked the power to sign a waiver after the expiration of the five-year

period.[1] What was said on this subject in reference to a waiver under the 1921 Act in *Stange* v. *United States, supra,* is applicable also to the corresponding provision of the 1924 Act. A difference in phraseology is called to our attention; but it is without significance. The further argument is made that in view of other sections in the 1924 Act,[2] an interpretation of § 278 (c) which permitted the giving of a waiver after the expiration of the five years, would lead to absurdities and inequalities which Congress could not have intended. Reference is made, first, to § 278 (e)[3] which, it is urged, renders inoperative any waiver signed after the enactment of the statute where the assessment in question was already barred prior thereto.[4] The inequality charged is that the limitation period for the assessment of 1918 taxes due under a return filed before June 2, 1919, could not, under the suggested interpretation, be waived after June 2, 1924, but that the corresponding limitation for the same tax due under a return filed after June 2, 1919, could be so waived. We

---

[1] See *Joy Floral Co.* v. *Commissioner,* 29 F. (2d) 865; *Columbian Iron Works* v. *Brock,* 38 F. (2d) 816. In these cases the taxpayers' contention was sustained and the waivers held inoperative.

[2] Respondent also cites § 278 (e) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 59, which substantially reënacted § 278 (e) of the 1924 Act, and urges that particular discriminations would result from the combined effect, under certain suggested interpretations, of these two sections. But the effect of a later statute cannot authorize an unintended and undesirable construction of an earlier act. Compare *Russell* v. *United States,* 278 U. S. 181, 188.

[3] " (e) This section shall not (1) authorize the assessment of a tax . . . if at the time of the enactment of this Act such assessment . . . was barred by the period of limitation then in existence. . . ." 43 Stat. 300.

[4] In the case at bar, the assessment would not have been barred until June 16, 1924, five years from the date of the return, and after the enactment of the 1924 Act, so that § 278 (e) is wholly inapplicable. Respondent offers the case of a tax under an earlier return merely for the purposes of its argument.

need not determine whether respondent is correct in assuming that § 278 (e) qualifies § 278 (c) in respect to waivers on assessment of taxes barred prior to June 2, 1924;[5] for even if that section has this effect, no objectionable inequality would result in permitting a revival of liability in one case and not in the other. Some arbitrary date must be taken for the imposition of a period of limitation. It may be taken likewise in regard to its removal.

Attention is also called to § 281 (e) of the 1924 Act,[6] which extended the time for making claims for refund where a waiver of assessment had been filed prior to certain specified dates,[7] and it is said that § 278 (c), as inter-

---

[5] Subdivision (e) cannot be said to qualify every other subdivision in § 278. Nothing indicates an intention to have it limit the effect of § 278 (a) which permits assessment to be made or suit to be brought at any time in the case of a false or fraudulent return or a failure to file any return. Compare *United States* v. *Updike,* 281 U. S. 489, 495; *United States* v. *Lazenby,* 5 F. (2d) 827. Nor is there any indication that it should qualify subsection (c) which provides for the giving of waivers. But see *Jacobs Brothers Co.* v. *Commissioner,* 19 B. T. A. 315, which involved § 278 (c) and related sections of the 1926 Act, *supra,* note 2. Compare *Steiner Mfg. Co.* v. *Commissioner,* 18 B. T. A. 740; *James & Holmstrom Piano Co.* v. *Commissioner,* 19 B. T. A. 322; *Gillespie* v. *Commissioner,* 20 B. T. A. 1068, 1079; *Wetherell Bros. Co.* v. *White,* D. Mass., decided December 3, 1930, U. S. Daily, December 30, 1930, p. 3291. The decision in *Russell* v. *United States,* 278 U. S. 181, involved the interpretation of subdivision (d) which extended the period for collection without any act on the part of the taxpayer. Subdivision (c) is effective only if the taxpayer voluntarily executed a waiver.

[6] 43 Stat. 302, as amended by the Act of March 3, 1925, c. 435, 43 Stat. 1115.

[7] E. g., for 1917 taxes, within five years after the return was filed; for 1918 taxes, before June 15, 1924; for 1919 taxes, before June 15, 1925. Claims might be made on or before April 1, 1925 for 1917 and 1918 taxes, on or before April 1, 1926 for 1919 taxes; or if the waiver was extended by a new waiver, then respectively before pril 1, 1926 or April 1, 1927; or within four years after the tax

preted, would, when read with § 281 (e), result in a discrimination against those taxpayers who had signed a waiver after the statute had run. The argument is that such taxpayers would still be liable for the tax, but that no corresponding extension of the limitation on claims for refund would be given. The dates specified in § 281 (e), however, do not coincide with the periods of limitation on assessment and collection. The purpose of that section was merely to extend the time for filing claims for refund in particular cases of taxes for the years 1917–1919. There is no necessary relation between it and § 278 (c). Moreover, a taxpayer who has signed a waiver and has had the validity of the alleged deficiency determined in the courts, on appeal from the Board's determination, has no good ground for complaint that he cannot thereafter raise the same question on a claim for refund.[8]

---

, was paid. 43 Stat. 116, 302, 1115–16. See Reg. 65, Art. 1307. These provisions followed a similar section in the Act of March 4, 1923, c. 276, 42 Stat. 1504–05, dealing with 1917 taxes; they were reënacted, to include claims for the refund of 1920 and 1921 taxes, in § 284 (g) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 67. Prior to the enactment of § 281 (e) of the 1924 Act, all claims for refund had to be filed within five years from the date the return was due, or within two years from the date the tax was paid, R. S. § 3228, as amended by the Act of March 4, 1923, *supra*. See Revenue Act of 1918, c. 18, § 252, 40 Stat. 1057, 1085; Revenue Act of 1921, c. 136, § 252, 42 Stat. 227, 268; Revenue Act of 1924, c. 234, § 1012, 43 Stat. 253, 342. Compare § 1112 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 115; *Minnesota Mutual Life Ins. Co.* v. *United States,* 66 Ct. Cls. 481, 493, certiorari denied, 279 U. S. 856; *Oxford Bank* v. *United States,* 44 F. (2d) 253.

[8] The 1926 Act expressly provided that where an appeal had been taken from a deficiency determination, no credit or refund could thereafter be allowed except in conformance with the decision of the Board. Section 284 (d), c. 27, 44 Stat. 9, 67. And refund or credit was allowable only if the petition had been filed with the Board within four years after the tax was paid, or a timely claim for refund had been made. Section 284 (e), 44 Stat. 67. This section was

*Third.* The taxpayer contends that, by its terms, the waiver expired December 31, 1926. The argument is that since the appeal to the Board of Tax Appeals had already been taken, the latter part of the instrument, relating to an extension of the time for assessment equal to the number of days the case would be before the Board, is inapplicable. The immediate object for which the waiver was given was to enable the case to be determined, without respondent being obliged to pay or to furnish bond; and it must have been assumed that thereafter the Commissioner would duly assess and collect the amount of the deficiency. The record reveals that three days before the execution of the waiver, the Solicitor of Internal Revenue wrote respondent that " as it is impossible at this time to determine whether the case will be disposed of by the board prior to the expiration of the period. . . . you are requested to execute. . . . the enclosed waiver . . .";  and he stated further that if the waiver were not given, the Commissioner would make a jeopardy assessment and require a bond as a condition of deferring collection. Consequently, the provisions of the latter part of the waiver were clearly intended to be applicable; and while its language perhaps was not as apt as it might have been,[9] there is no basis for denying its obvious purpose.

---

amended by § 507 of the 1928 Act, c. 852, 45 Stat. 871; 26 U. S. C., § 1065 (e), to make the filing of a claim for refund or credit unnecessary where an appeal was taken. On the general problem of refunds, compare H. Rep. No. 1, 69th Cong., 1st Sess., December 7, 1925, pp. 13–14; Hearings Before the Committee on Ways and Means on Revenue Revision of 1925, *id.*, pp. 285–92, 504, 934, *et seq.*, 981–83; Hearings Before the Senate Committee on Finance, on H. R. 1, *id.*, January 4, 1926, pp. 192–94, 208–09.

[9] The waiver was executed on the standard mimeographed form generally used prior to the mailing of a deficiency letter. Had it read: ". . . if a notice of deficiency *was* sent . . ." before

*Fourth.* The taxpayer contends that the waiver was inoperative because secured by duress. The argument. is that while the Commissioner in December, 1925, might have made a jeopardy assessment and have enforced collection, such action would have been illegal because the statutory period had then expired, and that a waiver procured by such a threat is ineffective. Whether or not the Commissioner would have been liable to the taxpayer for a collection made as the result of a jeopardy assessment in 1925, we need not determine. He clearly had the power to make such assessment and thereby compel the filing of a claim for abatement and the giving of a bond,[10] or, if such claim and accompanying bond were not filed, to make collection and relegate respondent to an action at law. In the absence of a determination that this deficiency was barred,[11] it was the Commissioner's duty to proceed to insure the assessment and collection of the tax. At his suggestion, the taxpayer executed the waiver. Thereby it was enabled to have all questions concerning the alleged deficiency considered by the Board. A waiver given under such circumstances is not invalid. This contention, which seems to have been raised for the first time in this Court, is also unsound.

*Reversed.*

---

December 31, 1926, there could be no doubt of its applicability to the appeal then pending. Its meaning, in view of the circumstances under which it was given, is nevertheless clear.

[10] See Revenue Act of 1924, c. 234, § 274 (d) and § 279 (a), 43 Stat. 253, 297, 300.

[11] Other waivers were alleged to be in existence, and while they were not produced at the trial before the Board, it is evident that in December, 1925, the Commissioner was of the opinion that the deficiency, already determined, was not barred. This was clearly stated in the letter to respondent requesting a waiver.