McDONNELL v. UNITED STATES.
No. K–488.

Court of Claims.
May 31, 1932.

Plaintiff sues to recover $4,549.03, with interest, income tax paid for 1917, on the ground that a waiver of the statute of limitation executed by him was invalid, and that the tax was therefore collected after the expiration of the statute of limitation.

Special Findings of Fact.

1. Plaintiff filed his individual income tax return for 1917 April 1, 1918, and paid the tax shown thereon to be due. The partnership of McDonnell & Truda, of which he was a member during 1917, filed its return of income on form 1065 on April 1, 1918, and paid the profits tax computed thereon under section 209 of the Revenue Act of 1917 (40 Stat. 307).

March 18, 1923, the Commissioner made a jeopardy assessment of $100,005.14, excess

profits tax for 1917, against the partnership, and a claim in abatement was filed protesting the amount of the tax assessed.

2. November 30, 1925, the Committee on Appeals and Review having considered the case of the partnership, and having recommended that the profits tax of the partnership for 1917 be computed under the special relief provisions of section 210, Revenue Act of 1917 (40 Stat. 307), the commissioner wrote the plaintiff the following letter:

"Reference is made to the appeal dated March 24, 1924, of the partnership of McDonnell and Truda, 5 State Street, New York, New York, of which you are a member, for assessment of its excess-profits tax for 1917 under the provisions of section 210 of the Revenue Act of 1917.

"You are advised that consideration of the application has been completed, indicating an overassessment of $75,141.86. However, a reduction of the excess-profits tax liability of the partnership necessitates a corresponding increase in the distributive interests of the partners and a corresponding increase in the taxable net income, resulting in additional tax liability for each partner. Your additional tax liability is $6,877.62.

"Inasmuch as the limitation of time within which to assess the $6,877.62 has expired, you are requested to execute and return to this office the enclosed form of waiver, to facilitate the adjustments of the partnership's overassessment and your resulting additional tax liability."

3. On December 17, 1925, the Commissioner mailed the following letter to the partnership:

"Receipt is acknowledged of your letter dated December 10, 1925, wherein you state that a letter has not as yet been received by you showing the amount of income and excess-profits tax finally determined to be due for the year 1917, and requesting that this letter be forwarded before compliance with the request of this office in bureau letters dated November 30, 1925, that waivers be furnished for the partners, Peter L. McDonnell and Dominic A. Truda.

"In the letters to Peter L. McDonnell and Dominic A. Truda mentioned above, they were advised that an audit of the partnership of McDonnell and Truda under section 210 of the Revenue Act of 1917 resulted in the determination of an overassessment of $75,141.86.

"The audit of the partnership can not be completed and no further action can be taken until waivers are on file for Peter L. McDonnell and Dominic A. Truda. When these waivers are received properly signed, a letter will be issued to you showing the computation of the tax resulting in the above overassessment."

4. February 12, 1926, the Bureau of Internal Revenue, not having received a reply from the plaintiff to the letter of November 30, 1925, again wrote him as follows:

"Reference is made to bureau letter, dated November 30, 1925, wherein you were advised that an audit of your income-tax return for the year 1917 resulted in the determination of a deficiency in tax of $6,877.62 due to assessment under the provisions of section 210 of the Revenue Act of 1917 of the partnership of McDonnell and Truda, of which you are a partner, and requesting you to execute a waiver which was inclosed for the purpose, in order that adjustment could be made of the overassessment of $75,141.86 determined for the partnership.

"Under date of December 17, 1925, in reply to a letter from the above-named partnership dated December 10, 1925, the partnership was advised that no further action would be taken until waivers are on file from you and your partner, Mr. Dominic A. Truda.

"You are, therefore, requested to execute and return to this office the inclosed form of waiver within fifteen days from the date of this letter in order that adjustment of the partnership's overassessment and your resulting additional-tax liability may be made."

February 23, 1926, plaintiff and the Commissioner consented in writing to the assessment and collection of any tax determined to be due by the Commissioner for 1917 beyond the period of limitation provided in the statute. This consent waived "the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1917 under existing revenue acts, or under prior revenue acts, to the extent of $6,877.62 conditioned upon the proposed additional assessment against McDonnell & Truda for the year 1917 of excess-profits tax, the sum being fixed at $24,863.28." This waiver was accompanied by a letter signed by plaintiff's representative and attorney in fact, dated February 23, 1926, in part as follows:

"Agreeable to your request, these waivers have been signed and are herewith inclosed.
* * *

"I wish to state that it has always been the desire of these two gentlemen to pay all

the income taxes justly due from them without any attempt to evade such payments by any means whatsoever * * *.

"When the waivers for 1917 were requested by you they were not withheld in an effort to evade the tax, but it would impose a great hardship on them to surrender a statutory right, which would inflict a tax of some $12,000.00 on them. * * * However, as an evidence of good faith, these waivers have been signed and forwarded to you.

"In requesting a conference I feel sure that by getting together with your conferee in Washington we can finally arrive at an amount which is acceptable to the commissioner and Messrs. McDonnell & Truda, which amount can then be paid and all tax matters for 1917 closed once and for all. We have no desire to take any part of the taxes in controversy before the Tax Board and are quite eager to settle it as expeditiously as possible within the Internal Revenue Department. The waivers are sent along with this letter as evidence of good faith in order that your conferee may feel thoroughly sure that no unfair advantage is sought by groundless appeals or other delays."

5. May 22, 1926, the Commissioner mailed to the partnership a letter accompanied by a detailed statement showing his final determination of the 1917 tax liability of the partnership. This letter reduced the additional assessment made against the partnership of $100,005.14 to $24,863.28, and advised the partnership, as follows:

"You are advised that after careful consideration and review, your application for assessment of your excess-profits tax under the provisions of section 210 of the Revenue Act of 1917 has been allowed. Your excess-profits tax is based upon a comparison with a group of representative concerns which in the aggregate may be said to be engaged in a like or similar trade or business to that of your company.

* * * * * * *

"In accordance with the above conclusions, your claim for the abatement of $100,005.14 will be rejected for $24,863.28."

A certificate of overassessment was duly issued to the partnership.

6. May 22, 1926, the Commissioner notified the plaintiff by what is commonly known as a "thirty-day letter" of a proposed assessment of a deficiency of $6,877.62 against him for 1917, as follows:

"An audit of your income-tax return for the calendar year 1917 has resulted in a determination of a deficiency in tax of $6,877.62, as shown in the attached statement.

* * * * * * *

"If a protest is filed, any additional evidence or briefs of argument submitted will be given careful consideration, and if the commissioner finally determines that there is a deficiency, you will be advised thereof by registered mail in accordance with the provisions of section 274 of the Revenue Act of 1926 (26 USCA § 1048 et seq.). Should you not agree to the deficiency as finally determined by the commissioner, you will be allowed sixty days from the mailing of the registered letter in which to file a petition with the United States Board of Tax Appeals for a redetermination of the deficiency."

There was inclosed with this letter to the plaintiff a "Waiver of Right to File a Petition with the United States Board of Tax Appeals." Plaintiff did not execute the waiver, but on May 26, 1926, filed written protest against the proposed additional tax of $6,877.62, and set forth a recomputation thereof showing a deficiency due in the amount of $4,386.15, instead of the larger amount shown due by the Commissioner's letter.

This protest was considered by the Commissioner, who thereafter, on July 12, 1926, notified the plaintiff of his final determination as follows: "After a careful review of your protest and of all the evidence submitted in support of your contentions, you are advised that your contentions have been allowed, and the computation of tax as shown in your brief dated May 26, 1926, disclosing a deficiency in tax of $4,386.15, has been accepted as correct, and the case forwarded for assessment." Thereafter, on October 9, 1926, the Commissioner made an assessment against the plaintiff of the additional tax so determined in the amount of $4,386.15. This amount, together with interest thereon, aggregating $4,549.03, was paid by the plaintiff to the collector of internal revenue for the Second district of New York on October 23, 1926.

7. Thereafter plaintiff filed two claims for refund on December 27, 1928, and May 31, 1929, respectively, alleging that the consent filed by him waiving the statute of limitation was invalid; that the tax was therefore collected after the running of the applicable statutory period of limitation; and that the Commissioner had failed to comply with the statutory requirements for the assessment and collection of the tax. These claims for refund were rejected on schedules dated

March 6, 1929, and July 25, 1919, respectively.

Robert Ash, of Washington, D. C., for plaintiff.

J. W. Hussey, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The first contention of the plaintiff is that the written consent executed by him waiving the statute of limitation for assessment and collection of a deficiency against him for 1917 was executed after the expiration of the statute of limitation; that it was obtained by duress, and was therefore invalid. He further insists that, since the period of limitation for making an additional assessment for 1917 expired prior to June 2, 1924, and the waiver in question was given after that date and before the enactment of the Revenue Act of 1926, the waiver in question is invalid under the decision of the Circuit Court of Appeals for the Second Circuit in Uncasville Mfg. Co. v. Commissioner, 55 F.(2d) 893, 895, decided February 1, 1932. We find no merit in the contention of the plaintiff that the waiver was invalid because executed after the expiration of the statute of limitations, Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335, nor in the claim that it was obtained under duress.

 The matter of the computation of the partnership's profits tax under the special relief provisions of section 210 of the Revenue Act of 1917 was entirely within the discretion of the Commissioner. Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 995. Had the Commissioner proceeded to collect from the partnership the excess profits tax due by it under the normal tax provisions of the Revenue Act of 1917 on its income for that year, as he had a right to do, such tax would have amounted to $100,005.14, and there would have been no overassessment against the partnership and no additional tax due by the partners. It cannot be said that a waiver executed by the plaintiff in order to obtain a reduction in the amount of the profits tax due by the partnership through a computation under the relief provisions of the statute was exacted by duress. He executed the waiver because it was to his advantage to do so. The Commissioner was not required to compute the tax of the partnership under the special relief provision, and had he declined to do

so, neither the partnership nor the plaintiff would have had any legal right to complain. Maas v. United States, 282 U. S. 822, 51 S. Ct. 33, 75 L. Ed. 734. Any adjustment in the profits tax liability of the partnership necessitated a corresponding adjustment in the distributive interests of the partners, and a reduction of partnership income increased the taxable income of the individual partners. The Commissioner therefore advised the plaintiff and the other partner of McDonnell & Truda that, if waivers of the statute of limitation with respect to their individual tax liability for 1917 should be filed by them, he would give consideration to the determination of the profits tax of the partnership under the special relief provisions of section 210. Accordingly, the plaintiff duly executed such waiver. He was not forced to do so, and the results obtained as a result of the execution of the waiver were favorable to him.

 The case of Uncasville Mfg. Co. v. Commissioner, supra, holds that, where the statutory period expired prior to June 2, 1924, waivers executed after that date and before the approval of the Revenue Act of 1926 were invalid.

We have carefully considered the decision of the learned Circuit Court of Appeals for the Second Circuit, but we are unable to concur in the conclusion that a waiver executed under such circumstances is invalid and that a tax collected on the basis thereof must be refunded. Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 141, 75 L. Ed. 343; Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; Stange v. United States, supra.

In the Uncasville Case, the court said:

"Confessedly, had the time for assessment expired after June 2, 1924, the waivers would have been good, though executed after the expiry of the time to assess or collect. Burnet v. Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349. However, section 278 (e) of the Act of 1924 (26 USCA § 1062 note) declared that the section, as a whole should not allow the assessment or collection of a tax, barred by existing limitations on June 2, 1924. Subdivision (e) of section 278 (26 USCA § 1060 note) is necessary to the assessments because they depended upon the waivers, and there was no other law regulating waivers in effect after June 2, 1924. Thus if subdivision (e) confines subdivision (c) to cases where the assessment was not barred on June 2, 1924, the company is right. In spite of some intimations in Burnet v.

Chicago Railway Company, which, however, expressly reserved the point, we think that an analysis of section 278 (26 USCA §§ 1058, 1059 and §§ 1060–1062 notes) as a whole does not admit of any other construction. * * * "

In none of the cases cited was collection barred on the date of the enactment of the Revenue Act of 1924; however, in Aiken v. Burnet, supra, a waiver had been given before the enactment of the Revenue Act of 1921 (42 Stat. 227), which fixed a limitation period of five years. The court held that the taxpayer had sufficient authority, in the absence of any statute, to execute a valid waiver, and that the Commissioner, under the same circumstances, had authority to accept such waiver and bind the government. The court further held that a waiver signed is valid to extend the subsequently enacted limitation upon collection. Other waivers were secured in the Aiken Case under the Revenue Act of 1921, and were held valid to authorize assessment on March 12, 1925. Again in Brown & Sons Lumber Co. v. Burnet, supra, the court infers that the last of the three waivers involved in that case would have been sufficient standing alone. A footnote in the opinion states: "Inasmuch as the second and third waivers were in themselves sufficient to extend the period for collection, the first waiver may be disregarded in this connection, as was done by the lower court. See 38 F.(2d) 428." In Brown & Sons Lumber Company Case, supra, the first waiver was filed December 13, 1920, and the second on December 10, 1923; the third waiver was filed October 25, 1924. In the Uncasville Mfg. Company Case the court construed section 278 (e) of the Revenue Act of 1924 as a *prohibition* upon the giving of a waiver by a taxpayer and the acceptance thereof by the Commissioner. We are unable to find any provision in the 1924 Revenue Act which precludes a taxpayer from voluntarily waiving the benefits of the statute of limitation, nor do we find anything in such act prohibiting the Commissioner's acceptance of such waiver. This view seems not to have been presented in the Uncasville Mfg. Company Case, supra; it was not commented upon by the court in its opinion. The court merely stated that subdivision (e) of section 278 of the Revenue Act of 1924 limits the preceding subdivision (c) of section 278 so that subdivision (c) does not *authorize* the extension of time for assessment by a waiver executed after the enactment of the Revenue Act of 1924 where the time for assessment expired prior to the enactment of that act. In Bur-

net v. Chicago Railway Equipment Co., supra, in footnote 5, page 300 of 282 U. S., 51 S. Ct. 137, 139, 75 L. Ed. 349, to the statement in the opinion that "We need not determine whether respondent is correct in assuming that section 278 (e) qualifies section 278 (c) in respect to waivers on assessment of taxes barred prior to June 2, 1924," it is stated that "Subdivision (e) cannot be said to qualify every other subdivision in section 278. Nothing indicates an intention to have it limit the effect of section 278 (a), 26 USCA § 1058, which permits assessment to be made or suit to be brought at any time in the case of a false or fraudulent return or a failure to file any return. * *, * *Nor is there any indication that it should qualify subsection (c) which provides for the giving of waivers."* (Italics ours.) We conclude, therefore, that the Revenue Act of 1924 does not preclude a taxpayer from waiving the benefit of the statute of limitation, and that a waiver given after the enactment of the Revenue Act of 1924, in a case where the statutory limitation had expired prior thereto, and before February 26, 1926, is valid.

The plaintiff next contends that the Commissioner failed to comply with the statutory requirement of assessment and collection of the tax for the reason that he did not send to the plaintiff a notice of the deficiency, as required by section 274 (a) of the Revenue Act of 1926 (26 USCA § 1048). We think this contention of the plaintiff is unimportant as affecting his right to institute a proceeding before the United States Board of Tax Appeals under the Revenue Act of 1926 upon receipt of notice of assessment, which would have constituted the Commissioner's final determination had the Commissioner failed to mail him a formal notice prior to assessment. However, the facts show that the Commissioner fully complied with the requirements of section 274. May 22, 1926, the Commissioner notified the plaintiff of a proposed assessment of a deficiency for 1917, allowing him thirty days within which to protest the same or to execute a waiver of his right to file a petition with the Board of Tax Appeals consenting to immediate assessment. The waiver was not executed, but plaintiff filed a protest setting forth that the correct tax was $4,386.15 instead of $4,549.03, as proposed by the Commissioner in the thirty-day letter. The protest was considered and allowed, and thereafter, on July 12, 1926, the Commissioner sent the plaintiff a written notice of his final determination of a deficiency for 1917 in the amount of $4,386.15. This no-

tice complied with section 274 (a) of the Revenue Act of 1926. The Commissioner was not required specifically to advise plaintiff in this notice of his right to institute a proceeding before the Board. The plaintiff did not institute a proceeding before the Board of Tax Appeals with respect to this deficiency, and thereafter, on October 9, 1926, more than sixty days after the mailing by the Commissioner of the notice of his final determination, the Commissioner assessed the deficiency and collected the same October 23, 1926. Section 274 (a) of the Revenue Act of 1926 does not require any special form of notice, but provides only that, if the Commissioner determines that there is a deficiency, he is authorized to send notice of such deficiency to the taxpayer by registered mail. The notice of July 12, 1926, which was received by the plaintiff, complied with this requirement.

The petition is dismissed. It is so ordered.