**SNYDER v. ROUTZAHN, Collector of Internal Revenue.**

No. 16536.

District Court, N. D. Ohio, E. D.

June 23, 1931.

Lee J. Ferbstein, Edgar H. Williams, and Merryl F. Sicherman, all of Akron, Ohio, for plaintiff.

Wilfred J. Mahon, U. S. Atty., of Cleveland, Ohio, for defendant.

JONES, District Judge.

By written stipulation, trial by jury was waived, and the case tried and submitted to the court upon the oral testimony and stipulated facts. Upon the evidence, with which the parties are familiar, my conclusion is that the plaintiff, who was the president of the bankrupt company, did not acquire the title to the asserted claim for refund of money paid in compromise of tax liability, and is not entitled to maintain this action.

The purpose of the applicable provision of the Bankruptcy Act relating to the filing of schedules (section 7 [11 USCA § 25]) is to fully advise the creditors and the court as to all of the property of the bankrupt of whatever kind and wherever situated. The alleged claim for refund was a chose in action with a specific character, which distinguished it from the other scheduled assets of the bankrupt. Form 1, Schedule B. (3) of the approved form of bankruptcy schedules (11 USCA § 53), filed under oath by the plaintiff as president, in pursuance to a resolution of the bankrupt company's board of directors, is captioned "Choses in Action," and item D therein calls for the listing of "unliquidated claims of every nature with their estimated value." Such claim was not scheduled, inventoried, or appraised, as required by the Bankruptcy Act and General Orders, and there is no evidence of probative value to justify a finding or conclusion that the trustee sold such claim in the bankruptcy proceedings.

While, generally speaking, irregularities, such as failure to appraise, may not be fatal, nor irregularities in the bankruptcy proceedings be open to collateral attack, yet the failure to schedule and the failure to include the claim in the proceedings to sell leave the plaintiff without any title to the claim. The assertion that such a claim was not scheduled and not specified in the proceedings to sell, because it was then thought to be of no value, is not persuasive in the light of the dexterity and dispatch with which presentation of the claim thereafter was made.

This is not a case where barred taxes were collected by distraint, or otherwise, or paid under protest. The supposed tax liability of the bankrupt company was compromised by the government as the result of a voluntary offer. In May, 1927, the rubber company paid $5,500 on account of taxes due for the year 1918, and in November of the same year the offer in compromise, shortly thereafter accepted, was made. The question of whether a compromise of tax liability is void or may be avoided, where made after the running of the statute of limitations, cannot turn upon the sections of the Revenue Acts relied upon by the plaintiff. They relate, for the most part, to limitation upon the collection of taxes, and we

are dealing here with a compromise or a voluntary liquidation of tax liability.

With reference to section 1106 (a) of the Revenue Act of 1926 (26 USCA § 1249 note), it will be observed that the United States Supreme Court has declared that section repealed, as of its effective date, by the Revenue Act of 1928 (section 612 [45 Stat. 875]). United States v. Barth, 279 U. S. 370, 375, 376, 49 S. Ct. 366, 73 L. Ed. 743; Mascot Oil Company v. United States, 282 U. S. 434, 436, 437, 51 S. Ct. 196, 75 L. Ed. 444.

There is no contention here that the additional taxes assessed by the Commissioner were not legally due; the sole contention being that the collection of the taxes was barred by the statute. The additional taxes, which were partly paid and the balance compromised, were assessed by the Commissioner in February, 1924. In March, 1924, the collector of Internal Revenue filed notices of tax lien in the District and state courts. It is assumed that the lien of the United States would become unenforceable if the collection of the tax was barred by statute. While it may be recognized that it is in the nature of mortals to avoid the payment of taxes, if there is any escape, the court cannot assume as a matter of law that the taxpayer would not have compromised the tax liability had it occurred to the officers that the collection of the taxes was barred by the statute. The compromise was not a collection of the taxes admittedly due, but a voluntary settlement of a tax liability to the government. In such case, the collector was merely a medium for receiving the amount tendered in compromise and for transmitting it to the Commissioner, who had the power to compromise. The taxes were abated by the compromise, and the right of recovery, if any, is against the United States as for money had and received.

For another reason, it seems to me the plaintiff must fail, if he had the right to press this claim. There is always a moral obligation to pay taxes, which is sufficient to support the consideration for their voluntary discharge after the tolling of the statute. In any event, under my previous conclusion respecting the incapacity of the plaintiff, any right to set aside the compromise, or to recover money mistakenly or wrongly paid, belongs to the trustee in bankruptcy.

Judgment may be entered for the United States, and findings and conclusions may be submitted for approval.